H3195 and each side has 15 minutes total. Good morning. Good morning, Your Honors. And I will be reserving approximately three minutes. Okay, aspirationally. Aspirationally, absolutely. Now, you have to keep track of your time, but I am looking at a clock. So sometimes I will indicate to people if they are going and going and do you want to keep time. Thank you. Go ahead. May it please the court, I am Jonathan Phillips and I am honored to be appearing on behalf of Plaintiff and Appellant American Medical Response of Inland Empire or AMR. The court asked in a focus order for the parties to be prepared to address the parallel state court litigation. So I think that is a great place for me to start this morning. That would be great. After the district court dismissed the complaint in this federal case, AMR did file its state claims, writ of mandamus, declaratory relief and breach of contract in San Bernardino County Superior Court. It then filed this instant appeal addressing only the dismissal of the antitrust cause of action. So did you file in your state action, did you file antitrust allegations as well? We did not, no. AMR is not asserting any antitrust claims in the state action. Okay, so what happened? You won, didn't you? Well, AMR was able to obtain a preliminary injunction. So preliminarily the court has indicated, the Superior Court, that it agrees with AMR and AMR's position. But that is a preliminary injunction and so by definition it's a preliminary indication of where the court is leaning. We have a merits hearing on the writ cause of action coming up on April 18. AMR believes and is confident that the court will continue to agree with its positions, but it's not a guarantee. And AMR is... Sorry, well, obviously we have legal issues here about whether this court, whether you can bring that action in this court or whether there's Parker immunity. But that being said, if you win in the state court, are you going to dismiss this or you just want the contract, right? Not necessarily. And it goes to the reason why AMR is pursuing parallel litigation. Of course, AMR did not seek to dual track this litigation. AMR sought to have all of its claims adjudicated in one forum, the federal district court. But you could bring a Sherman Act claim in state court, couldn't you? You can, yes. But you chose not to. Chose to bring all the claims in federal court, correct. Okay, but you filed the parallel state court action. So if you lose here, then you don't have a Sherman claim in state court? Or you could add that, I guess. I mean, if we lose here, I think we run into some hurdles trying to reassert that claim in state court. And that is why this parallel litigation is important. Obviously... Have you sought to stay the state court action pending the final determination in this appeal? I'm sorry? So you're telling me that you have a merits hearing on your permanent... So you have a permanent injunction or merits hearing on April 18th? Correct.  And has there been any discussion to stay the state court litigation pending an outcome in this appeal? No, there has not been any discussion or any request. So you're dual tracking your litigation? We are dual tracking the litigation. I think what Judge Callahan is getting at is you're seeking... If you win in either case, you have obtained the relief that you've requested. You don't need to win in both cases. Correct? You only need to win in one. So you're essentially pursuing dual tracks of litigation. I would agree with Your Honor in part, but only to a point. The state causes of action in the federal antitrust claim are being brought, both of them being brought, for different reasons. And those laws protect distinct interests. I understand that you're raising multiple claims that, of course, bring to bear different interests. But you originally sought to have all of those claims heard in one court, in the federal court. And only when you were unsuccessful and your state court claims were dismissed in federal court did you pursue. You didn't wait to file that state court action. You filed it right away. And now you're pursuing dual tracks of litigation. Absolutely. And AMR could not afford to wait for this appeal to play out in order to seek and obtain a preliminary injunction. The contract that was illegally awarded to CONFIRE was set to become operational and go into effect October 1st of last year. So once the district court exercised its discretion and declined to keep the state law causes of action before the court, AMR really had no choice but to immediately file suit in state court and seek an injunction. Why not dismiss this appeal since you have obtained some type of relief in state court and are about to have a merits hearing? And you understand the reluctance of any court to issue an advisory opinion in a case where it may not be necessary to grant relief if you're getting the relief that you're requesting in another court. Absolutely. And that comes back to why AMR is pursuing both the state and the federal and why it pursued them both in the first instance, albeit in one form. The state law writ of mandamus claim looks narrowly at compliance with this specific RFP or competitive process. And its focus is on whether AMR's interests have been harmed by the defendant's conduct. But there's bigger issues at play here. A violation of federal antitrust laws needs to be addressed by the federal courts because the explicit focus and purpose of federal antitrust laws is to protect the market more broadly, to protect the consumers, the EMS system, the labor market for EMS professionals. But partner immunity has got to mean something. And we've got the Omni case and all of that. When I look at the RFP, it says the county will award the exclusive contract to the highest scoring proposer whose proposal conforms to the RFP and whose proposal presents the greatest value to the residents and visitors in San Bernardino County's comprehensive service area. So it doesn't, I don't read it. I read that there's a little more to it than just the highest points. And you're both, you're within what, three points of each other, something like that? It's pretty close. It was close. And the point part of it. The point part of it. And so I don't see how, with the way the RFP is written, why it couldn't be CONFIRE because even if you got a higher score, the few points, couldn't CONFIRE be the highest scoring proposer under the way because it presents the greatest value to the county? The RFP wasn't just about the numerical score. So that's, I'm putting that back right at you. The numerical score reflects all of those other considerations. So if you really do a deep dive into the RFP, which is what we're asking the state court to do as part of the writ of mandate cause of action, what you see is that the independent evaluation committee was presented with a number of criteria or categories. Included in that were financial issues. It was, you know, everything imaginable that would go into deciding and determining which bidder is the best suited to provide these critical services. Which bidder is providing the best value to the county? And under the terms of the RFP, that gets encapsulated and captured by the final score. And the language of the RFP is clear. And what was approved by the state was that the highest scoring bidder is who gets presented to the board for negotiation and contract. That's your side of it. But Parker Immunity talks about, you know, what if the board of supervisors decides they're going to pick the cutest dog in that county? And, you know, there's, and, you know, it seems to me that the argument against you is then you're asking us to litigate in federal court and we're zealous about our jurisdiction. All these state court issues that are a matter of state law in these counties doing things, when you have an available remedy in state court. So the available remedy in state court. I don't want to pick the cutest dog. You know, and I don't know that I want to pick between AMR and Confire. Those are, it seems to me, that that's what Parker Immunity is about. Right, but Parker Immunity is limited. It's, number one, it's a narrow exception, right? And it only applies if, setting aside the state itself, which clearly is a different standard. When you're talking about a sub-state entity like the county, Parker Immunity only applies if that sub-state entity, here the county of San Bernardino, is acting pursuant to the state's authority. And that phrase, pursuant to. Let me ask you about that. I agree with you that we have to first ask whether or not the county acted pursuant to its policy. And so I think we have to go to the policy. And you're making the argument that because we start and end at the highest score language in the RFP and the determination in the score sheet that shows that AMR received three points higher in its scoring than Confire. Correct? Can you give me your best argument for how you're defining highest score? Because I can't find a definition for highest score anywhere in the RFP. And I think, you know, perhaps we can talk about whether there's sort of a colloquial understanding of what that phrase means. But, you know, there's an argument that there's the highest median score and then there's the highest total score. How do we know which the RFP is referring to when it says highest score? And why should we adopt that argument that you're presenting?  Highest score, in our view, is clearly the highest overall score when you take the independent four scores and add them together and you get a total score. I know that the county and Confire have come up with alternative metrics, and they've done this in the state court as well, to find a way mathematically to make it look like Confire was the higher score. How do we get there? Give me the argument for and the legal citations to be able to adopt your interpretation of highest score to mean exactly what you just laid out. So I don't know that there's not a case that addresses this specifically. I think it's more of a common sense and dictionary term or definition of what highest score means. But it's also how the county treated it in the first instance. The county, when it, for example, denied the proposal or the protest that AMR filed, didn't come back and say, well, no, you're wrong. Confire had the highest score because here's the median. The county acknowledged that AMR was the highest scoring proposer. It never disputed that until very recently in coming up with these alternative- to be able to account for the variation in ranges of individual scores. I mean, I'm not saying to you that that definition necessarily trumps your definition, but there are public policy reasons why you look at a median score when you're talking about individual evaluators in a procurement proceeding, because you can have these large swings of scores from one evaluator to the other. I'm trying to figure out why should we adopt your definition so that we can then say, yeah, they exceeded their scope under the plain language of the RFP. Well, number one, I don't think it was necessarily just our definition. Again, it's the county's definition as well. Where is that? I believe in the letter denying the protest. For example, I think in the briefing in this case as well, the county has not ever contested that AMR was the highest scoring. It really has thrown out these other metrics as kind of a way to make it look better that CONFAR was really pretty close. They were really close, three points out of 1,600 points or whatever, 1,500 points. They were very close, but AMR was the only proposer that had the highest score. So, counsel, answer this for me. They said the RFP included the county's procurement policies and the best value evaluation method. What is your understanding of what that evaluation method is? The best value evaluation method, there's two ways to look at it. One is under the county's general locally enacted procurement policies, which do not give it Parker immunity. The other is to look at the RFP itself. And again, as I mentioned earlier, the best value was all encompassed in the criteria that the review committee was evaluating. And then it's all captured in the overall score that is given. Where in the record does that tell me that it's already encapsulated in the overall score? It's in the RFP itself. I can give you the site and the record on my rebuttal time if I'm able to reserve any. But I think one thing that I do want to say and make sure I say is that the reason that Parker immunity does not apply is because the county faced a fork in the road when the RFP process was finished. On down one path, it could follow the RFP and award the contract and follow the authority granted to it and delegated to it by the state and award the contract to the highest scoring proposal. On the other path, it could throw the RFP out and turn instead to its local police power and its locally enacted procurement policies and say, we're going to award to who we want to award, and that's Confire. Down the first path is Parker immunity. Down the second path, there is no Parker immunity. And that's what AMR has alleged and that's what AMR should be allowed to prove factually at trial. And with that, I'll reserve the rest of my time. All right, well, I'll give you two minutes for rebuttal. We had a number of questions. Thank you. Thank you. All right. So we're going to hear from are we doing the 12 minutes first? That's correct, Your Honor. OK. May it please the court. Jordan Carney on behalf of the county, the county defendants. I'd like to zoom out here and take a look at what we're talking about. We are here discussing the details of an RFP to find out if the county applied it appropriately. Well, I think the question is whether you strictly adhere to the language in the RFP. And so let me start by asking you this question directly. Your friend on the other side said that the county concedes that they are the highest score, that that has not been contested. Do you agree with that statement? I disagree with that statement, Your Honor. The county, it's very clear in the record, on page 270 of the record, when the Board of Supervisors is debating what to do, they have an unusual situation here. They have a situation where they've determined that the two proposers are substantially equivalent. And they say, what do we do here? Well, the RFP says we can look at best value. Our policies say we look at best value. That's what we should do. That makes sense. Yeah, but I think the argument that he's making is that at that moment, they veered from strictly adhering to the language in the RFP because the RFP says highest score. And they ultimately, there is clearly, you know, the total highest score is AMR by three points. And so if they then decide these are basically equivalent, which they're not because one is three points higher, they have moved from strictly adhering to the language of the RFP to doing this other thing that perhaps the county is entitled to do, but that we are now in a different analysis with respect to Parker Immunity. You are correct that it is a different analysis. But I disagree that it's a different analysis with respect to Parker Immunity. It's a different analysis in so much as there might be a debate under state law about the correct way to handle that situation. You are also correct that there's a state court action to deal with just that in 10 days. Under Parker Immunity, the question is not whether we adhered correctly to the exact terms of the RFP. The question is whether there's a clearly articulated state policy to displace competition. Here three times the court has looked at this exact statute, the EMS Act, and said there is a clearly articulated reason to displace competition. That makes good policy sense. Here what we're talking about is an exclusive operating area. An exclusive operating area is so critical, and the California State Supreme Court has acknowledged this in San Bernardino. What it does is it pairs a difficult to serve area with a rural population or a poor population, and it pairs it with a lucrative area. And the reason for that is we want everyone to get an ambulance when someone calls 911. So the state has said we're going to achieve that policy by allowing for these exclusive operating areas. That's what we're achieving here. Why not include that in the RFP expressly? If you want better response times, if you want more competition, if you want price to be a factor, why not include all of those things? Or as maybe was argued by the other side, those things are included. They're just part of the ultimate score. That is a good question, and I think it's the exact question that the state court is going to be answering in 10 days. What we're here to talk about, though, is Parker immunity. And let's say we got it wrong. Let's say that AMR is correct, that the county should have declared them the winner, and that we didn't have discretion to make a decision. Let's say they're right. Parker immunity still applies. We have four cases here that say the scope is broad. We have Llewellyn, Boone, Omni, and Trueweek. And all four of those look at situations where there were allegations of problems with the process, allegations of lack of a condition precedent, allegations of even corruption and bribery or conspiracy, and they still say the immunity is still attached. You know, if we're talking about ‑‑ I sort of want to test the reach of Omni, which I read as saying federal courts are not the proper forum for determining whether a state agency exercised its power in a manner authorized by law. So let's assume you didn't go through the competitive process at all, and instead of going through the state‑approved RFP process, you decided to pick names out of a hat to decide who would get the exclusive contract. Would you have Parker immunity for that? That is a much more challenging question than we have today because, of course, we did go through a competitive process. I would argue that Parker immunity under the statute looks at the legislature's intent to displace competition, not at the how. So I think that the limit of Omni is we can't go into a different market. We can't do something that the legislature didn't contemplate. I don't think that the limit of Omni is a procedural limit. And I would also say under state law, all we have here is one‑term competitive process, right? There's no state law articulating what that is supposed to look like. So if you take an extreme example, drawing out of a hat could be a competitive process. You don't have to take that extreme example here because it's undisputed that we had a competitive process. AMR even relies on its score. The validity of the competitive process here is not at issue. It's the ultimate selection that's at issue. Go ahead. Can you address the ‑‑ and I'm changing course here. So if you need to defer responding to my question to answer Judge Callahan's question, we can do that. But I want you to answer the question that we raised in the focus order, which is what is the impact of the state court litigation. And kind of going back to some of the questions I asked your friend on the other side, have you sought a stay of the state court action pending this appeal? Is there any work on the part of the parties to ensure that the courts are not undergoing work and issuing advisory opinions in cases where it may not matter? We have not sought a stay in the state court. And the reason is we think that that's the correct action, right? We want to get to the end. We want to figure out what the result here and what the result here should be. We think that this is the case that should be ended. And we, again, didn't appeal, right? So that's our position. If you compare the remedies requested in the state court action and here, they're nearly identical. So I think ‑‑ They could have brought a state antitrust action. Counties are, per se, immune from the Clayton Act under the state law. So the state court enjoined your contract with Confire, saying that forwarding the highest score proposal to the board was an entirely ministerial act to be performed under the RFP. I'm assuming you disagree with that. I disagree with that. But why do you disagree? And do we owe any deference to the state court decision in light of Omni saying that state courts are the proper forum for deciding whether an agency has acted in a manner authorized by law? To the extent you want to accept the state court's preliminary injunction as the law of the state, which we disagree with and are challenging, that doesn't change the analysis here. So if you want a case type for that, that case would be in the Llewellyn decision. There was a background. In the background of that case, there had been a referee appointed to evaluate the process that the state had undergone to adopt the regulation, and that referee had determined that under state law the agency had violated the law and the process was improper. And the Llewellyn court still applied the immunity. Counsel, I have a question for you. So is it your position that conducting any competitive process for exclusive ambulance services contracts will confer Parker immunity? Yes, Your Honor, it is. Okay. And then are there any limitations on that? Any limitations on the scope of the competitive process? I think there are under state law. I think there are limitations on what that process can look like under state law. There's still fairness issues that are at play. And I want to be clear that those fairness issues are still going to be addressed. If there was a wrong here, it will be righted. The issue here is antitrust law, right? So what AMR is trying to do is take this routine procurement dispute. They want to substitute themselves as a winner, but they're trying to use antitrust law to do that. They don't have any case to cite. You can't find an antitrust case where a plaintiff says, give me a monopoly. Use antitrust to give me a monopoly. And that's what they're asking for here. So to the extent there are limits, to answer your question, on what a competitive process would look like, those limits are within the state's discretion. I also want to be clear. Beside the state court action, there's an additional state process to evaluate the competitive process that is ongoing. So each year at the end of the year, the county submits its EMS plan, which includes everything that the county will be doing for EMS. And the state has the option to deny the plan. And if they deny the plan, that denies the exclusivity, right? So that is a process that's ongoing. The county has not submitted an EMS plan that has this competitive process in it. When it does that, if the state doesn't like the competitive process, then we'll go through the whole administrative appeal process and then go to state court. There's plenty of process to make sure that this is a fair process. But again, those are state procurement processes. Let me ask you the same question I asked your friend on the other side. Best value evaluation. Was that already included in the highest point score? That's a difficult question to answer. I think that when you have two proposers that have nearly the same score, right? We have three evaluators for one and one for the other. What the county did here was exercise its discretion to determine what the best value was. And I think it makes a lot of sense when you have line staff looking at an RFP and saying, hey, you know, we don't have a clear winner. I think it makes good policy sense to say let's send it to the elected officials to evaluate this in a public session and determine what the best value is. What is a clear winner in your mind? I mean, they believe they're clear winners. Three points is three points. I'll give you an example. In Sonoma County, we had these same parties. We had a fire agency and we had AMR. And there was a clear winner. There was the fire agency there got many more points. How many is many? That's what I'm trying to get at is in my mind, three points can be clear. That can be a clear winner because you said highest score. They have the highest score by three points. In your case example that you just gave, was there a difference in the median highest score?  Okay. So when you talk about the highest score or them being similar, I kind of want to flush out this issue of what a highest score really means. If we're relying entirely on that, let's just say we assume that all those other factors of best value are sort of built in or baked into the scoring, then we still have to answer the question about what the highest score means. And is it here we actually have two different winners? If we interpret highest score to mean the total highest score versus the median highest score, how do we know which is the correct definition? Under the RFP, it says that the county might advance proposers with an S in parentheses to the next round to just talk about negotiation of contracts and then present those contracts to the board. That's consistent with county policy. So it's not unheard of to have nearly identical scores, right? County policy says when we have nearly identical scores, what we're going to do is we're going to negotiate with both and then let it go to the discretion of the board. That's what I think makes sense here. Now, if I were writing a new RFP, I would probably have included some more clear definitions of what highest score means. But that is an issue that we need to sort out with the state court. It's a routine issue. It's not something that's going to bring us outside of Omni and TrueWeek. This is not a divergence. You heard my friend on the other side say we have one path over here and then we have another path over here. And that's just not the situation we're in. Because even if we're on this path, we're at maybe we didn't read highest score correctly. And that very clearly is nothing like the corruption, the bribery, the issues that we see in Omni, TrueWeek, Boone, and Llewellyn where immunity is still attached. Do you have any additional questions? All right. Thank you. Your time has expired. We took a little over. So then we have three minutes for, I think, Confire. Good morning, and may it please the court. My name is Andrew Skouten. I represent Confire. Confire is asking the court to affirm the dismissal of AMR's claims on both park immunity but also for lack of antitrust injury. I was planning on talking about the lack of antitrust injury, but I think I might address some of the questions the panel has posed to my colleagues. So first off, the Sherman Act, it's exclusive jurisdiction of the federal courts. So that claim could not be filed in state court. And in commenting on the Sherman Act issues, the court would not be somehow displacing the state court or giving an advisory opinion. The state court does not have the authority to opine on Sherman Act issues. You would agree that if AMR prevails in state court, the ruling from this court is superfluous. It's unnecessary. They've won whether we agree or not with your argument. In terms of the remedy, yes. But in terms of AMR not having a Sherman Act claim, that is a separate issue that the state court cannot resolve that is resolved by either the Parker immunity ground or the lack of antitrust standing. It's about whether or not AMR can state a claim under the antitrust laws. That's what the Parker immunity question is. So, I mean, technically, all right, and I know that you won't agree with this, but hypothetically if we said Parker immunity doesn't apply, then the thing would be you look at what they've stated and can they plausibly state an antitrust action? And if not, or could they do so with leave to amend? Correct, Your Honor, we would disagree on the Parker immunity, but let's go to the second stage. But I'm just saying hypothetically. Absolutely. If the court did not agree that there was Parker immunity, then it seems to me they probably could plausibly state a claim or at least be given the opportunity to leave to amend. So I sort of see, I see the Parker immunity as the pivotal point here. Well, Your Honor, AMR lacks antitrust standing under Section 16 of the Clayton Act because they cannot show antitrust injury. What happened here is that AMR has had the exclusive service rights in the CSA, the comprehensive service area, for more than 40 years. They bid on this contract and they lost. And their allegations regarding their loss are that they lost this exclusive ambulance franchise and are now excluded from its historical service area. They request the remedy of the contract award to confire being invalidated and enjoined, which would leave them in place as the monopolist or the contract. So they're asking for the same thing that they're asking for in state court. Yes, but as a matter of law, under the antitrust laws, a would-be monopolist does not suffer antitrust injury. In a case called the Columbia River People's Utility District, 217F3rd at 1190, this court said, quote, but if the plaintiff's only claim is of the nature, I, rather than the defendant, was entitled to be the monopolist of this market, then the plaintiff is not a victim of antitrust injury. That same principle has been implied in three different circuits. We cited all three of those cases in the procurement context, finding there's no antitrust injury when the holder of an exclusive contract with the government loses the procurement and is out. AMR did not address those cases in its brief, did not distinguish them, and it can't, because whether the consumers are harmed by this or whether competition is harmed by this, they're not. From the consumer standpoint, it's just a shuffling of providers. They never really had a choice in the first instance of what provider they were going to get. When you call 911, you don't get to say, well, we would like provider A versus provider B. The dispatching center sends the closest available, most appropriate resource. There's no harm to competition here when an existing monopolist loses their contract. Okay, let me find out if you're over time, if either of my colleagues don't have any questions. So you're over time. Thank you, Your Honor. Thank you.  Let me start with delivering on what I promised, which is a cite to the record, answering the question of what is the highest score, what does that mean. This is the notice of intent to award that was issued by the County Purchasing Department to AMR at the conclusion of the RFP process. ER 833, 833. And there the county writes, the San Bernardino County Purchasing Department has completed the evaluation process for proposals received in response to the RFP. Based on the evaluation, AMR received the highest score and will receive the Independent Evaluation Committee's recommendation for award as stated in the RFP. The county itself has admitted. Then it goes on to say more after that. It does. It goes on to say, and this is the second path I was talking about, right? If they stayed on the first path, it's the first paragraph of that letter. Going down the second path is saying, but even though AMR received the highest score, we think it's close enough and we think there's other considerations and we think that, importantly, the County Board of Supervisors has exclusive jurisdiction that overrides the state authorities' provisions in the EMS Act and approval of the RFP. And under those local police powers and locally enacted policies, the County Board of Supervisors has the discretion to award this contract to CONFIRE. That's why there's no park immunity. I think it's important. There's been a lot of questions and we've done our best, I think, on both sides to answer Your Honor's questions about the details of the RFP, the details of the law and what led us here. But I think it's important to remember that we're here on an appeal of a motion to dismiss. I see the and here. The county intends to award an initial five-year contract to the highest scoring proposer whose proposal conforms to the RFP and whose proposal presents the greatest value to the residents and visitors in the San Bernardino Comprehensive Service Area.  There is an and. As opposed to an or. Or opposed to nothing. Correct. As opposed to an or. If it was an or, there would be a different analysis. It's an and. And the first part of that conjunctive sentence is highest scoring. The county has admitted that AMR was the highest scoring proposal. But they also said that they thought CONFIRE could better serve the area. The County Board of Supervisors did say that.  Didn't they take testimony there too? People talked at the Board of Supervisors? There was no testimony in terms of under oath. People spoke. People spoke, absolutely. And the County Board of Supervisors indicated at the end of that hearing that despite AMR being the highest scoring proposal under the RFP, despite the county's purchasing department issuing the Notice of Intent to Award to AMR, that the County Board of Supervisors had the discretion under its own locally enacted procurement policies to disregard that. I think we understand your argument. I think we're focused. You're already a minute and a half over the extra time that I gave you. But if my colleagues don't have additional questions, take 30 seconds and wrap it up. 30 seconds and wrap it up. Again, I'll come back to the procedural posture of where we act. I think that that's important. This is an appeal of a motion to dismiss. If, and my colleague for Confire argued that AMR has not sufficiently alleged standing under the Antitrust Act, and we disagree with that, but that's for the District Court to engage with in the first instance. And if the District Court disagrees, it should be giving AMR an opportunity to amend its complaint to allege that. We believe that AMR has properly alleged that the county acted entirely outside of the delegated authority from the state, therefore is not entitled to park immunity, and therefore is in violation of the federal antitrust laws. Thank you. Thank you for your argument, both. This matter will be submitted. The court will just take a very brief recess. And if the parties on the next, well, I guess it's five appeals, if you can take your places at council table, we'll be back out and start that argument. Thank you. All rise. This court is taking a brief recess.
judges: CALLAHAN, DESAI, ALBA